IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Case No. 5:24-CV-123

| | |
|---|---|
| SUSAN LEE WEBBER, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **AMENDED COMPLAINT** |
| TOWN OF MOORESVILLE; and | ) |
| TOWN OF MOORESVILLE | ) |
| POLICE DEPARTMENT, | ) |
| Defendants | ) |

NOW COMES plaintiff Susan Lee Webber ("Webber"), by and through counsel pursuant to Fed. R. Civ. P. 8 and 15(a) and complaining against Defendant Town of Mooresville and Defendant Town of Mooresville Police Department (collectively "Defendants").

PARTIES AND JURISDICTION

1. At all times relevant herein, Webber was employed by Defendant Town of Mooresville as a police telecommunicator with the Mooresville Police Department. Webber is presently a citizen and resident of Virginia Beach, Virginia.

2. At all times relevant herein, Defendant Town of Mooresville ("Defendant Town") is a Municipal Corporation within the State of North Carolina, capable of suing and being sued, having no governmental immunity for Plaintiff's claims, or in the alternative, having waived governmental immunity by purchase of insurance.

3. At all times relevant herein, Defendant Town of Mooresville Police Department ("Department") is a department within Defendant Town's organization and is wholly funded and controlled by Defendant Town. Employees who work in the Department are employees of Defendant Town. The Department is not a separate and distinct entity from the Defendant Town.

4. At all times relevant herein, all of Defendant Town's directors, supervisors, managers, and employees, as alleged herein, were acting within the course and scope of their employment. Moreover, Defendant Town has ratified the actions of Defendant Town's directors, supervisors, managers, and employees, as alleged herein. At all relevant times herein, Defendant Town's directors and supervisors were employed by Defendant Town and were empowered to make decisions regarding Webber's employment.

5. Webber is asserting claims against Defendants pursuant to the Americans with Disability Act of 1990, as amended ("ADAAA") and codified in 42 U.S.C. §§ 12101, *et seq.*, and the Age Discrimination in Employment Act ("ADEA").

6. At all times relevant herein, Defendant Town has had twenty-five (25) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and therefore, is an "employer" under 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 630(b).

7. At all times relevant herein, Defendant Town's unlawful employment practices took place in Iredell County, North Carolina.

2

Case 5:24-cv-00123-KDB-DCK   Document 14   Filed 08/28/24   Page 2 of 15

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Western District of North Carolina, which is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## ADMINISTRIVE REMEDIES

10. On July 12, 2019, within 180 days after having been subjected to the discriminatory practices as alleged herein, Webber filed *pro se* a charge of discrimination against Defendant Town of Mooresville Police Department with the United States Equal Employment Opportunity Commission ("EEOC") (Charge number 430-2019-02426), concerning Webber's claim of having been subject to disparate treatment because of her disability and/or age.

11. In response to Webber's EEOC charge, Defendant Town as "Respondent Mooresville Police Department" submitted a position statement on January 9, 2020, wherein it depicted the Mooresville Police Department ("MPD") as Webber's employer and properly named respondent in the EEOC charge as demonstrated in the following examples:

   a. "Even if Ms. Webber could establish a *prima facie* case of disability discrimination, MPD had a clear, legitimate and non-discriminatory reason for terminating Ms. Webber . . . ."

   b. "Rather, the evidence shows up to the finding that Ms. Webber was not fit for duty, MPD made efforts to keep Ms. Webber on as an employee."

   c. "Therefore, consistent with MPD's employment policies set forth in the Employee Handbook, Ms. Webber was terminated."

12. On March 16, 2022, the EEOC issued a determination finding "reasonable cause to conclude that Respondent violated the ADA."

13. In response to EEOC's determination, Defendant Town submitted a "Request for Reconsideration." In this document, Defendant Town represented MPD as Webber's employer and properly named respondent in the EEOC charge as demonstrated in the following examples:

   a. "**THE MPD'S ACTION WAS A LEGITIMATE BUSINESS DECISION**" [section header];

   b. "As noted above, the MPD had no obligation to maintain the Charging Party's employment, and was entitled to move forward with termination of employment . . . ."

   c. "However, the MPD was not required to provide the Charging Party with indefinite leave . . . ."

   d. "The MPD does not admit or concede any of the Charging Party's claims or factual allegations."

   e. "By providing this request, the MPD is not waiving any of its rights or defenses to the same."

14. On February 19, 2024, EEOC issued a notice of right to sue letter ("Notice") to Webber for charge number 430-2019-02426. The Notice stated that, "you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 1211, et seq. against the above-named respondent." The respondent was identified as "Mooresville Police Department" in the Notice. A true copy of the Notice is located at Document 1-2.

15. Webber reasonably relied on Defendant Town's representations to the EEOC that MPD was the properly named respondent to the EEOC charge and on

4

EEOC's identification of MPD in its Notice as the properly named defendant in a prospective civil action, to understand that a civil action should be filed against MPD as the named defendant. Accordingly, Webber filed *pro se* her initial complaint in this action against "Defendant Town of Mooresville Police Department" as the named defendant within ninety (90) days of the receipt of the Notice.

16. Defendant Town participated in all phases of the response to EEOC Charge number 430-2019-02426, including the conciliation process. Defendant Town has had notice of this action since service of the complaint on Defendant Town's clerk, Jane Crosby, on July 15, 2024.

17. Webber has met, satisfied, and exhausted all administrative remedies, conditions, and prerequisites required for this action.

## GENERAL ALLEGATIONS

*Background*

18. In November of 2016, Webber was hired by Defendant Town as a police telecommunicator for Defendant Town's Police Department.

19. For her first performance review, Webber's performance was rated "exceeds expectations."

20. On March 13, 2017, Webber was formally acknowledged by the Department's Assistant Supervisor Maureen Connolly for a "job well done" for her professional handling of a domestic disturbance call where she was able to obtain a description of the suspect which led to the suspect's arrest while providing reassurance to a distraught victim.

5

21. On May 25, 2017, Webber was again formally acknowledged by Assistant Supervisor Maureen Connolly for superlative work in her handling of a 911 call. In that instance, Webber was credited for maintaining her composure during a high stress situation resulting in the arrest of two suspects linked to a high number of thefts in the area. A Department Captain even commended her performance, stating that she was "very professional and skilled."

*Hostile Work Environment – Director Davis*

22. Despite her stellar work performance and commendations regarding the same, the Department's Director of Communications Susan Davis ("Director Davis") consistently denied or ignored Webber's requests to participate in training programs that would have allowed her to advance her skills and improve her chances for potential promotions. Younger employees, however, were allowed to participate in these training programs. Webber's date of birth is October 5, 1970.

23. On November 20, 2017, Webber met with Damon Williams, the Department's police chief at the time, to discuss the training opportunities denied her but nothing was done to address this issue.

24. On December 13, 2017, Webber spoke with William Conrad, the chaplain for the Department, ("Chaplain Conrad") regarding her interest in obtaining Critical Incident Stress Management ("CISM") certification. CISM is a formal structured process that can be used before, during, and after a crisis and has been characterized as "psychological first aid." Webber recognized that CISM certification would be beneficial in her job. Given the lack of response from Chief Williams and

6

the resistance she was encountering from Director Davis, however, Webber decided she would have a greater chance of obtaining certification through a program separate from the department.

25. On February 8, 2018, Director Davis sent a department wide email regarding a CISM Peer Support Team. Webber immediately emailed Director Davis saying that she was interested.

26. On February 9, 2018, Director Davis emailed Webber and accused her of breaking the chain of command by speaking with Chaplin Conrad even though Chaplin Conrad was not in her chain of command. Director Davis copied Major Ronnie Chilton on the email.

27. From the date of Webber's hire, she had expressed interest in participating in domestic violence programs. On January 23, 2018, she spoke with Captain David Call and Detective Dan Miglin about the department's domestic violence programs.

28. On February 16, 2018, Webber followed up with Captain Call about her participation in these programs and was told that Director Davis requested that Webber not be allowed to participate in any domestic violence programs.

29. On February 21, 2018, Webber met with Chief Williams and Captain Gaypeart Peralta "Captain Peralta" to discuss ongoing concerns with Director Davis. No action was taken as a result of the meeting.

7

30. On March 1, 2018, Webber met with Defendant Town's Human Resources Director Keli Greer ("Greer") to discuss concerns with Director Davis. No action was taken as a result of the meeting.

*Failure to allow reasonable accommodation for disabilities*

31. As a result of Director Davis's discriminatory conduct towards Webber and Webber's reasonable belief that Defendant Town would not take any action to correct Director Davis's misconduct, Webber suffered from increased anxiety, depression, and headaches. Webber also had a history of neck and back pain.

32. At the end of August, Director Davis asked Webber if she intended to go out on FMLA. Webber responded that she did not, that she only anticipated being scheduled for physical therapy for her neck and back which could be worked around her schedule.

33. On September 18, 2018, Webber texted Assistant Supervisor Connolly that she would not be in to work the following day because her leg had swollen to twice its size, that she was unable to walk, and that she was in severe pain. Director Davis then texted Webber that she was to be on shift from 6:00 p.m. to 6:00 a.m. on Thursday which was September 20. Webber was unaware that she was being moved to the evening shift. Assistant Supervisor Connolly emailed Webber on September 19, taking full responsibility for not informing her of the shift change.

34. On September 19, 2018, Webber was in the hospital for a massive, life-threatening blood clot. She texted Director Davis and Assistant Supervisor Connolly

to inform them that she would not be in to work that day due to her medical condition and that she was in the hospital awaiting surgery.

35. On October 17, 2018, Webber returned to work after undergoing three surgeries. Despite her vulnerable condition, the workplace remained hostile. As a consequence of this environment, anxiety, depression, and chronic pain, Webber suffered a mental health crisis which resulted in another hospitalization. Due to the hospitalization, she did not return to work until January 28, 2019.

36. When Webber returned to work, she discovered that Director Davis had been assigned to sit next to her for several days to ensure that she could still "effectively and efficiently perform her job duties." The close proximity to Davis was a cause of significant and predictable anxiety for Webber. Additionally, Webber discovered that same day that co-workers and officers had been made aware of her mental health issues. As a result of these factors, she broke down crying several times that day. She was assured by Captain Peralta that she could try again the next day and they would work with her.

37. When Webber returned to work the following day, Captain Peralta called her into his office and told her that she was being placed on medical leave and that she must undergo a fit for duty evaluation. At that time, Webber was seeing a therapist for her mental health issues.

38. On February 5, 2019, Webber was seen for a fitness for duty evaluation by the FMRT Group. A report of that evaluation was completed that day.

9

39. In the "Clinical Impression" section, the FMRT report noted that Webber had a history of emotional instability but that she had improved her stability since being appropriately diagnosed and receiving psychotherapy. In the summary section, the report stated the following:

> Ms. Webber is not fit for duty in her position as a police telecommunicator with the Mooresville Police Department. She may be expected to return to full fitness for her position following continued treatment of four-to-six weeks resulting in a stable mood, documentation from health care provider, and re-evaluation.
>
> Ms. Weber knows how to access medical and psychological care as needed.

40. After she was seen by FMRT, Webber continued receiving psychotherapy and her condition continued to improve such that, on information and belief, she would have been ready to return to full duty within the timeline stated in the FMRT report.

41. On February 27, 2019, Chief Williams sent a letter to Webber notifying her that on February 22, 2019, Defendant Town had received written notification from FMRT that Webber would not be fit for duty for another four to six weeks and that as a result of these findings, her employment was being terminated effective immediately.

42. Prior to notifying Webber of her termination, Defendant Town never requested that Webber be re-evaluated by FMRT despite the fact that the FMRT report expressly stated that Webber would be expected to return to full fitness for her

position in four-to-six weeks following continued treatment, documentation from her health care provider and re-evaluation.

43. Prior to notifying Webber of her termination, Defendant Town never engaged in any interactive process with Webber.

44. Webber was unemployed for approximately eight months after her termination. Subsequent employment provided less earnings and benefits than she had while employed by Defendant Town.

FIRST CLAIM FOR RELIEF
(ADAAA)

45. The foregoing allegations are hereby realleged and fully incorporated herein by reference as if fully set forth herein.

46. Webber is asserting a claim under the Americans with Disability Act of 1990, as amended ("ADAAA") and codified in 42 U.S.C. §§ 12101, *et seq*.

47. At all times relevant herein, Defendant Town has been a covered entity within the meaning of 42 U.S.C. § 12111(2).

48. At all times relevant herein, Webber has been "disabled" within the meaning of 42 U.S.C. § 12101(2) in that she had a physical or mental impairment that substantially limited one or more of the major life activities for her. Namely, Webber suffered from depression, post-traumatic stress disorder, anxiety and chronic pain which when untreated, limited her concentration and impaired her ability to communicate effectively with others.

49. At all times relevant herein, Webber's disability, as alleged herein, was well known by Defendants.

50. On information and belief, Defendant Town wrongfully and intentionally discriminated against Webber in violation of the ADAAA by (a) by failing to allow her the additional four to six weeks of medical leave recommended by FMRT so that she could return to full fitness for duty, (b) failing to engage in an interactive process with her when aware of her disability, and (c) prematurely terminating her employment based on her disability.

51. As a direct and proximate result of Defendants' acts of discrimination against Webber because of her disability or perceived disability, as alleged herein, Webber has incurred harms, losses, and damages in an amount to be determined at trial, but in excess of $25,000.

SECOND CLAIM FOR RELIEF
(ADEA-Hostile Work Environment)

52. The foregoing allegations are hereby realleged and fully incorporated herein by reference as if fully set forth herein.

53. Webber is asserting a claim of discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621, *et seq.* ("ADEA").

54. At all relevant times herein, Webber was over the age of 40.

55. At all relevant times, Webber was subject to severe and pervasive harassment based on her age and said harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment.

56. Defendants were aware of and authorized the harassment directed at Webber because of her age.

57. As a direct and proximate result of Defendants' acts of discrimination against Webber because of her age, as alleged herein, Webber has incurred harms, losses, and damages in an amount to be determined at trial, but in excess of $25,000.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Webber hereby makes demand for a trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Webber prays unto the Court as follows:

1. That Webber receive judgment against Defendants in an amount to be determined at trial for all compensatory damages, including without limitation, back pay, front pay, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and any other applicable damages, plus interest;

2. That Webber recover from Defendants all pre-judgment and post-judgement interest and court costs, including without limitation, expert witness fees, deposition costs, and attorneys' fees as permitted by law; and

3. That the Court grant Webber such other and further relief as the Court deems just and proper.

This the 28th day of August, 2024.

                        BAILEY & DIXON, LLP

                        By: */s/ Philip A. Collins*
                              Philip A. Collins, NC State Bar #29153
                        Attorneys for Plaintiff
                        Post Office Box 1351
                        Raleigh, North Carolina 27602
                        Telephone: (919) 828-0731
                        Facsimile: (919) 828-6592
                        E-Mail: pcollins@bdixon.com

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the 28th day of August, 2024, I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

    C. Grainger Pierce, Jr.
grainger.pierce@vraptlaw.com

This the 28th day of August, 2024.

    /s/ Philip A. Collins
NC State Bar #29153
pcollins@bdixon.com