## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO.  5:24-CV-123-KDB-DCK

| | | |
|---|---|---|
| **SUSAN LEE WEBBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **TOWN OF MOORESVILLE,  and** | ) | |
| **TOWN OF MOORESVILLE POLICE** | ) | |
| **DEPARTMENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER IS BEFORE THE COURT on "Defendant Town Of Mooresville's Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 32) and "Defendant Town Of Mooresville Police Department's Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 34).  These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and are now ripe for disposition.  Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that "Defendant Town Of Mooresville's Motion To Dismiss…" (Document No. 32) be <u>denied</u> and that "Defendant Town Of Mooresville Police Department's Motion To Dismiss…" (Document No. 34) be <u>granted</u>.

### I. BACKGROUND

Plaintiff Susan Lee Webber ("Plaintiff" or "Webber"), appearing without counsel, initiated this action by filing a form "Complaint For Employment Discrimination" (Document No. 1) against Defendant Town of Mooresville Police Department ("MPD") on May 15, 2024.  Plaintiff then filed an "Amended Complaint" (Document No. 14) against Defendant MPD and the Town of

Mooresville ("Defendant Town" or "the Town") on August 28, 2024, with the assistance of counsel. Plaintiff filed a "Second Amended Complaint" (Document. No. 28) (the "Complaint") against Defendant MPD and the Town on October 23, 2024. The Complaint alleges violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). (Document No. 28).

The Complaint alleges that in violation of the ADEA, "Webber was subject to severe and pervasive harassment based on her age and said harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment." Id. at p. 13. It further alleges that "Defendants were aware of and authorized the harassment directed at Webber because of her age." Id.

The Complaint also alleges that Defendant Town "wrongfully and intentionally discriminated against Webber" in violation of the ADA by "(a) failing to allow her the additional four to six weeks of medical leave recommended by FMRT so that she could return to full fitness for duty, (b) failing to engage in an interactive process with her when aware of her disability, and (c) prematurely terminating her employment based on her disability."[1] (Document No. 28, pp. 12-13).

According to the Complaint, the Town hired Plaintiff as a police telecommunicator for MPD in November 2016. (Document No. 28, p. 6). Plaintiff alleges meeting with her superiors on multiple occasions between November 2017 and March 2018 to discuss "training opportunities denied her" and other "ongoing concerns" about how MPD's Director of Communications Susan Davis ("Director Davis") had been treating her. (Document No. 28, pp. 7-8). "No action was

---

[1] Apparently, The FMRT Group provides "Psychological and Medical Support for Safety-Sensitive Employers," including facilitating psychological evaluations. See (Document No. 1-2, pp. 14-16).

taken as a result of [these] meetings." Id. at p. 8. Plaintiff alleges that "[a]s a result of Director Davis's discriminatory conduct towards Webber and Webber's reasonable belief that Defendant Town would not take any action to correct Director Davis's misconduct, Webber suffered from increased anxiety, depression, and headaches. Webber also had a history of neck and back pain." Id. at p. 9.

On September 19, 2018, Plaintiff was hospitalized for a "life-threatening blood clot." After three surgeries, Plaintiff returned to work on October 17, 2018. Id. Plaintiff alleges that her workplace remained hostile when she returned, and "this environment, anxiety, depression, and chronic pain" led her to suffer a "mental health crisis which resulted in another hospitalization" on October 28, 2018. Id. at pp. 9-10.

On January 28, 2019, Plaintiff again returned to work. (Document No. 28, p. 10). Plaintiff alleges that pressure from Director Davis coupled with the discovery that "co-workers and officers had been made aware of her mental health issues" caused her to "[break] down crying several times that day." Id. The next day, MPD placed her on medical leave, and on February 5, 2019, The FMRT Group conducted a "Fitness for Duty Evaluation." Id.

In The FMRT Group's "Fitness for Duty Evaluation," the doctor noted "Ms. Webber has experienced several stressful life events in the past few years including undiagnosed chronic pain exacerbated by her experience of her work place as hostile." (Document No. 1-2, pp. 15-16). The doctor also opined that "[Ms. Webber] has improved her stability and agency since being appropriately diagnosed and receiving psychotherapy…. Her records note improvement in her emotional stability and self-care, but indicate[] ongoing instability in her mood and suicidality." Id. The doctor concluded:

> Ms. Webber is not fit for full duty in her position as a police telecommunicator with the Mooresville Police Department. **She**

3

> **may be expected to return to full fitness for her position**
> **following continued treatment of four-to-six weeks resulting in**
> **a stable mood, documentation from health care provider, and**
> **re-evaluation.**

(Document No. 28, p. 10) (citing Document No. 1-2, p. 16) (emphasis added).

On February 27, 2019, MPD's Chief Damon Williams sent Plaintiff a letter notifying her that her employment was "terminated effective immediately" based on findings from the "Fitness for Duty Evaluation."  (Document No. 28, p. 11) (citing Document No. 1-2, p. 4).  The Complaint alleges that Plaintiff "was not informed of any findings" in The FMRT Group's "Fitness for Duty Evaluation" until after receiving Chief Williams' notice of termination of her employment. (Document No. 28, p. 11).

The Complaint asserts that on July 12, 2019, a few months after her job was terminated by MPD, Plaintiff filed a "Charge Of Discrimination" (No. 430-2019-02426) against MPD with the Equal Employment Opportunity Commission ("EEOC").  (Document No. 28, p. 3).  The Charge was attached to the original Complaint and includes the following allegations:

> During my employment I made complaints to my manager and Human Resources that **I was being subjected to disparate treatment because of my age, denied training and denied the benefits of seniority in favor of younger, less-tenured employees.** On January 27, 2019, I returned from medical leave to find my medical information had been emailed to my peers and other coworkers. The next day, I was told I had been referred to [Employee Assistance Program ("EAP")], and that I either comply or be discharged. On January 30, 2019, I was told because I refused to comply with EAP, I was being sent for a Fit for Duty Evaluation. On February 28, 2019, via an email dated February 27, 2019, I was noticed I was discharged, effective immediately.
>
> The reason given for my discharge was that I required additional leave for my medical conditions, of which my employer was aware. **I believe I was discharged in retaliation for my complaints of age discrimination and need for additional leave as an accommodation.**

(Document No. 1-2, p. 4) (emphasis added).

On March 16, 2022, "the EEOC issued a determination finding 'reasonable cause to conclude that Respondent violated the ADA.'" (Document No. 28, p. 4). In response, Defendant Town submitted a "Request for Reconsideration."[2] Id.

On February 29, 2024, the EEOC sent an email to Plaintiff with the subject line, "ADA & ADEA (Age) Notices of the Right to Sue." (Document No. 28, p. 5) (citing Document No. 28-1, p. 1). The body of the email stated:

> Attached is your ADA & ADEA (Age) Notices of the Right to Sue in the above referenced case filed with the EEOC, and your rights under the ADA Amendments Act. Your 90-day period begins with your receipt of the Notice.

Id. Three documents were attached to the EEOC's email: a "Notice Of Right To Sue Within 90 Days"; "Information Related To Filing Suit Under The Laws Enforced By The EEOC"; and a "Conciliation Failure And Notice Of Rights." (Document No. 28-1, pp. 3-11). The "Conciliation Failure And Notice Of Rights" cited to Plaintiff's EEOC Charge and stated that Plaintiff had ninety (90) days to file a lawsuit "based on this charge." (Document No. 28-1, p. 7). Plaintiff filed her initial Complaint on May 15, 2024, less than ninety (90) days after receiving the EEOC's email and the two (2) attached Notices Of Right To Sue dated February 29, 2024. (Document No. 1); see also (Document No. 28-1).

Defendants Town and MPD filed the pending motions to dismiss (Document Nos. 32 and 34) on November 20, 2024. Plaintiff filed a Response to Defendant Town's motion (Document No. 36) on December 3, 2024, and the Town filed its "Reply Memorandum In Support…" (Document No. 42) on December 24, 2024.

---

[2] Plaintiff did not attach the "determination" or "Request for Reconsideration" to the Complaint or elsewhere.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual

6

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### A. Claims Against the Town of Mooresville

Defendant Town moves to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Document No. 32). Specifically, the Town alleges that this action should be dismissed because: (1) Plaintiff's claim alleging a hostile work environment under the ADEA "is barred because it was not timely filed, and it exceeds the scope of the Plaintiff's underlying charge of discrimination"; and (2) Plaintiff's claim under the ADA "is subject to dismissal because the Amended Complaint affirmatively discloses that the Plaintiff is not a 'qualified individual with a disability,' the Plaintiff did not request an accommodation, and if an accommodation had been requested from the Town it would have been *per se* unreasonable." (Document No. 32, p. 1).

#### 1. ADEA Claim

> To state an ADEA hostile work environment claim, a plaintiff must allege that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her […] age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."

Williams v. Charlotte-Mecklenburg Hosp. Auth., 3:20-CV-242-RJC-DSC, 2021 WL 5782752, at *9 (W.D.N.C. Dec. 7, 2021) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

First, Defendant Town argues that Plaintiff's ADEA claim is time-barred and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 32, p. 1). The Town asserts that

7

Plaintiff filed her original Complaint over a month after the deadline to file a lawsuit under the ADEA, and it argues that equitable tolling is inapplicable. (Document No. 33, p. 9). The Town contends that on January 9, 2024, the EEOC gave written notice to the parties "that it had terminated processing of the charge, and expressly informed the Plaintiff that '[a]ny 90-day period applicable to this Charge during which suit should be filed under the ADEA begins upon the Charging Party's receipt of this notification.'" Id. at p. 8 (quoting Document. No. 22-1). The Town further contends that "the January notice unambiguously explains that while the United States Department of Justice (the "DOJ") would review the ADA allegations in the Charge and issue a right to sue letter regarding the ADA, 'neither [the EEOC] nor the DOJ will issue a Notice of Right to Sue for the ADEA allegations in this Charge.'" Id.

The Town argues that Plaintiff's allegedly reasonable belief that "she had ninety days within which to file suit for both ADA and ADEA claims" after receiving the "Notice Of Right To Sue" for her ADA claim on February 29, 2024, is insufficient to invoke the doctrine of equitable tolling. (Document No. 33, pp. 10-12). The Town quotes a Fourth Circuit case to assert the following:

> The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time."

Id. at p. 10 (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (citation omitted)). Here, the Town argues, "for equitable tolling to apply, the Plaintiff would be required to plead the existence of 'extraordinary circumstances beyond [her] control' that 'made it impossible to file the claim[] on time.'" (Document No. 33, pp. 10-11).

The Town relies on two cases from the Eastern District of North Carolina that it argues had "functionally similar circumstances." Id. at p. 11 (citing Donald v. Novant Health, 689 F. Supp. 3d 170 (E.D.N.C. 2023); Zow v. Bd. of Governors of Univ. of N.C., 2024 WL 1285532 (E.D.N.C. Mar. 26, 2024)). The town asserts that in both Donald and Zow, the court held that alleged misstatements by the EEOC were insufficient to invoke the doctrine of equitable tolling because it was not "impossible" for the plaintiffs to timely file. Id.

Second, Defendant Town argues that even if equitable tolling applies, Plaintiff's ADEA claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because "it exceeds the scope of the Plaintiff's underlying charge of discrimination." (Document No. 32, p. 1). The Town contends that only one sentence in Plaintiff's Charge relates to her age:

> During my employment, I made complaints to my manager and Human Resources that I was being subjected to disparate treatment because of my age, denied training and denied the benefits of seniority in favor of younger, less-tenured employees.

(Document No. 33, p. 3) (quoting Document No. 1-2, p. 4). The Town asserts that after filing a charge with the EEOC, "[a] Plaintiff's subsequent civil action must be limited in scope to those issues found in the EEOC charge." (Document No. 33, p. 12) (quoting Abadi v. Mecklenburg Cty. Health Dep't, 3:17-CV-435-FDW-DCK, 2017 WL 5711394, at *5 (W.D.N.C. Nov. 27, 2017). The Town argues that "the allegations contained in the underlying Charge do not support a subsequently-pled hostile work environment cause of action." (Document No. 33, p. 12).

In response, Plaintiff argues that "the statute of limitations should be equitably tolled so that the ninety (90) day period is deemed to have commenced on February 29, 2024, thereby rendering her ADEA claim timely filed." (Document No. 36, p. 7). Plaintiff acknowledges the January 9, 2024, notice that indicated a 90-day period to file a suit under the ADEA but argues that because the February 29, 2024, email's subject line and body both mentioned the ADEA,

9

Plaintiff reasonably believed that she had 90 days after February 29, 2024, to file an ADEA claim.

Id. Plaintiff contends that:

> [D]espite initially informing Webber that she would not receive a
> "Notice of Right to Sue" for her ADEA claim, the EEOC in fact did
> send Webber a "Notice of Right to Sue" ostensibly for that claim
> and the accompanying email indicated that she had ninety (90) days
> after receipt of the notice to file suit with respect to both ADA and
> ADEA claims.

(Document No. 36, p. 7).

Plaintiff asserts that "equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant," and "[c]ourts have held that when an administrative agency misleads a complainant, particularly one who is without the benefit of counsel, equitable tolling may be justified." (Document No. 36, p. 8) (first quoting Anderson v. Unisys Corp., 47 F.3d 302, 306-07 (8th Cir. 1995); then citing Conaway v. Control Data Corp., 955 F.2d 358, 363 (5th Cir. 1992)). Plaintiff further asserts that "[c]ourts have specifically applied equitable tolling in the context of delayed filings by claimants caused by misleading information supplied by the EEOC." (Document No. 36, p. 8) (citing Lawrence v. Cooper Communities, 132 F.3d 447, 451 (8th Cir. 1998); Martinez v. Orr, 738 F.2d 1107, 1111-12 (10th Cir. 1984)).

Plaintiff argues that Donald and Zow are "inapposite as they involve alleged oral communications from unidentified EEOC employees." (Document No. 36, p. 10) (citing Donald v. Novant Health, 689 F. Supp. 3d 170 (E.D.N.C. 2023); Zow v. Bd. of Governors of Univ. of N.C., 2024 WL 1285532 (E.D.N.C. Mar. 26, 2024)). Plaintiff contends that in Zow, the court noted a "great potential for abuse" if "an accurate, but incomplete, oral statement by the EEOC [could] be the basis for equitable tolling." Id. (quoting Zow, 2024 WL 1285532, at *14). Plaintiff argues that "these concerns are absent in this case," so equitable tolling is appropriate. (Document No. 36, p. 10).

10

In response to the Town's argument that Plaintiff's ADEA claim exceeds the scope of the EEOC charge, Plaintiff asserts that "[c]onstrued liberally, Webber's EEOC charge gave the Town sufficient notice of a hostile workplace claim arising out of a history of alleged punitive discriminatory practices based on Webber's age." (Document No. 36, p. 12). Plaintiff contends that "[a]n EEOC charge must sufficiently describe the alleged discriminatory acts and identify the accused parties so as to (1) notify the EEOC and the employer of the scope of the allegations and (2) provide an opportunity for compliance." (Document No. 36, p. 10) (quoting Abadi, 2017 WL 5711394, at *5). Plaintiff further contends that "[a]s EEOC charges are not normally drafted by lawyers, courts are to construe them liberally, requiring only that the factual allegations of the charge reasonably relate to the factual allegations of the formal litigation." (Document No. 36, pp. 10-11) (quoting Abadi, 2014 WL 5711394, at *5).

In its Reply, the Town asserts that Plaintiff's argument that "her alleged 'reasonable belief'…constitutes 'excusable neglect'" fails to meet the applicable Fourth Circuit standard for equitable tolling. (Document No. 42, p. 1) (quoting Document No. 36, pp. 6-8. The Town asserts that "[w]hile the cases cited by the [Plaintiff] may reflect the law in the [Fifth, Eight, and Tenth] [C]ircuits, they do not accurately represent the law in the Fourth Circuit." Id.

The Town further argues that Plaintiff's "attempt to distinguish" Donald and Zow is "unavailing." (Document No. 42, p. 2). The Town asserts that the "operative question is whether the alleged statement upon which the Plaintiff relied 'made it impossible to file' within the applicable time period," and "[f]or the purposes of this analysis, the form of the statement (*i.e.*, whether it was written or oral), and whether it was made by an unidentified individual, are distinctions without any functional difference." Id. The Town contends that Donald and Zow correctly applied the Fourth Circuit standard in dismissing the plaintiffs' claims after finding no

11

"extraordinary circumstance" that "made it impossible to file" in a timely manner, and argues that the Court should do the same here. (Document No. 42, p. 3).

The Town again asserts that "nothing" in the Charge alleges the required age-based discrimination "sufficient to give rise to a hostile work environment claim." Id. (citing Harris, 510 U.S. at 21).

The question of whether equitable tolling is appropriate presents a close call, but the undersigned is persuaded that it was reasonable for Plaintiff to construe the February 29, 2024, EEOC notice as inclusive of her right to sue under the ADEA, thus replacing the timeline indicated in the January 9, 2024, notice. See (Document No. 28-1). Plaintiff had multiple reasons to deduce that the timeline had reset for her ADEA claim: the EEOC included "ADA & ADEA" in the subject line and body of the February 29, 2024, email; and the EEOC cited Plaintiff's Charge in its "Conciliation Failure And Notice Of Rights" without any limitation to claims and explained Plaintiff's "right to sue **based on this charge**" within ninety (90) days. (Document No. 28-1, p. 7) (emphasis added).

Equitable tolling is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

> In determining whether equitable tolling should apply, courts "should conduct a thorough examination of the facts." Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir.1987). The Fourth Circuit has noted that tolling "might be warranted in cases involving bad advice from the governmental agency charged with enforcing discrimination complaints." Poteat v. Mack Trucks Inc., No. 96–1437, 1997 WL 33117, at *4 (4th Cir. Jan. 28, 1997). This would include cases in which the EEOC erroneously advises a plaintiff about the filing deadline, causing an untimely filing.

Linton v. Rowan-Cabarrus Cmty. Coll., 2013 WL 1331680, at *3 (M.D.N.C. Mar. 29, 2013), adopted sub nom. Linton v. Rowan-Cabarrus Cmty. Coll. ex rel. Paradowski, 2013 WL 4478699 (M.D.N.C. Aug. 20, 2013). "If equitable tolling is 'plausibly alleged,' the claim may be allowed to proceed at the Rule 12(b)(6) stage, but the burden will be on the plaintiff after discovery to 'establish that equitable tolling is indeed justified on the facts of [the] case.'" Id. (quoting Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 413 (M.D.N.C. 2011)).

Based on the foregoing, and viewing Plaintiff's Complaint in the most favorable light, the undersigned finds that Plaintiff has "plausibly alleged" equitable tolling and that the 90-day period to file her ADEA claim should be deemed to have started on February 29, 2024.

The undersigned is further persuaded that Plaintiff's ADEA claim does not exceed the scope of the underlying EEOC Charge. Plaintiff's Charge of Discrimination states that she was "subjected to disparate treatment because of [her] **age**," "discharged in retaliation for [her] complaints of **age** discrimination and need for additional leave as an accommodation," and "discriminated against and subjected to retaliation in violation of the [ADEA] based on [her] **age**." (Document 1-2, p. 4) (emphasis added). Moreover, Plaintiff checked the "AGE" box on the form. Id.

The undersigned finds that construed liberally, the Charge "sufficiently describe[d] the alleged discriminatory acts" relating to age and "identif[ied] the accused parties so as to (1) notify the EEOC and the employer of the scope of the allegations and (2) provide an opportunity for compliance." Abadi, 2017 WL 5711394, at *5.

For the foregoing reasons, the undersigned will respectfully recommend that Plaintiff's ADEA claim be allowed to survive at this early stage of litigation.

13

## 2. ADA Claim

> [T]o establish a prima facie case against [her] employer for failure to accommodate under the ADA, the plaintiff must show: "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations."

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citation omitted)).

Defendant Town makes two arguments as to why Plaintiff's ADA claim should be dismissed: (1) she is not a "qualified individual with a disability" as required by 42 U.S.C. § 12111(8); and (2) she did not request a leave accommodation, but if she did, it would have been unreasonable. (Document No. 32, p. 1).

The Town contends that to establish a prima facie case of disability discrimination under the ADA, "the Plaintiff must show in pertinent part that she 'is within the ADA's protected class'"—that she is a "qualified individual with a disability." (Document No. 33, p. 13) (quoting Haulbrook v. Michelin North America, 252 F.3d 696, 702 (4th Cir. 2001)). The Town further contends that "a 'qualified individual' is defined as someone who 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" Id. (quoting 42 U.S.C. § 12111(8)).

The Town argues that because Plaintiff could not perform her job at the time she was terminated, she was not a "qualified individual" under the provisions outlined in 42 U.S.C. § 12111(8). (Document No. 33, p. 13). In support of this argument, the Town quotes a Fourth Circuit opinion to assert that "these provisions…are formulated entirely in the present tense, framing the precise issue as whether an individual 'can' (not 'will be able to') perform the job with

14

reasonable accommodation."  (Document No. 33, p. 14) (quoting <u>Myers v. Hose</u>, 50 F.3d 278, 283 (4th Cir. 1995)).

The Town also asserts that in a case from this Court with "functionally similar circumstances," the plaintiff was required to show "that she could accomplish the essential function of job attendance in the here-and-now and not at some indefinite point in the future." (Document No. 33, p. 14) (quoting <u>McKinney v. Cleveland Cnty. Bd. of Educ.</u>, 3:20-CV-221-MOC-DSC, 2022 WL 1697395, at *5 (May 26, 2022)).  The Town then quotes a case from the Fourth Circuit to contend that "[a]n employee who does not come to work cannot perform *any* of her job functions, essential or otherwise."  (Document No. 33, p. 14) (quoting <u>Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.</u>, 31 F.3d 209, 213 (4th Cir. 1994)).  The Town thus contends that "Plaintiff's Second Amended Complaint and the referenced Fitness For Duty Report establish that the Plaintiff was not fit for duty in the position that she alleges she held" when her employment was terminated, so her ADA claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 33, pp. 14-15).

Defendant Town next asserts that Plaintiff's ADA claim should be dismissed because Plaintiff never requested an accommodation, and the "proposed accommodation" she alleges would be *per se* unreasonable.  (Document No. 33, p. 15).  The Town contends that "[t]he duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability *and his desire for an accommodation for that disability*."  <u>Id.</u> (quoting <u>Wilson v. Dollar General Corp.</u>, 717 F.3d 337, 346-47 (4th Cir. 2013)) (emphasis in original).  The Town also contends that a recent Fourth Circuit case held "the plaintiff's ADA claim failed because she did not request an accommodation."  (Document No. 33, p. 15) (citing <u>Anderson v. Diamondback Inv. Grp., LLC,</u>117

15

F.4th 165, 181 (4th Cir. 2024)). The Town argues that the ADA claim should be dismissed pursuant to that holding. Id.

The Town argues that Plaintiff "impliedly contends that the Town should have provided [her] with additional leave for a non-definite period of time, that was dependent on: (1) the results of apparent ongoing treatment to correct a stated medical condition; as well as (2) a re-evaluation." (Document No. 33, p. 15) (citing Document No. 28, pp. 10-11). The Town also argues that the "conditional assessment that the Plaintiff 'may' be expected to return in four (4) to six (6) weeks" reflects "inherent uncertainty of the circumstances" that would render an accommodation unreasonable. (Document No. 33, p. 15).

In response, Plaintiff argues "the fact that Webber could not perform the essential functions of her job at the time of dismissal is not dispositive as to whether she has sufficiently alleged an ADA claim." (Document No. 36, p. 15). Instead, Plaintiff contends, the relevant question is whether Webber could have performed her job functions "at the end of the requested leave." (Document No. 36, p. 13). Plaintiff asserts that in Wilson, the employee was not a "qualified individual" under the ADA because he did not offer evidence that he could have performed essential job functions on the "requested return date"; and here, "Webber has specifically alleged that had she been granted the four to six weeks of leave recommended in the FMRT Report, she would have been able to return to full duty." Id. (citing Wilson, 717 F.3d).

Plaintiff argues that the Town's reliance on Myers to argue Plaintiff is not a "qualified individual" is misplaced. (Document No. 36, pp. 13-14). Plaintiff contends that in Myers, the court stated, "reasonable accommodation…is most logically construed as that which presently, or *in the immediate future*, enables the employee to perform the essential functions of the job in question." (Document No. 36, p. 14) (quoting Myers, 50 F.3d at 283) (emphasis in original).

16

Plaintiff then asserts that the court "did not give any guidance as to what time frame constitutes 'the immediate future' and critically did not hold that the plaintiff in that case was not a 'qualified individual' based on the plaintiff's inability to perform the job's essential functions at the time of termination." Id. Instead, Plaintiff argues, the court "limited its holding to the issue of the unreasonableness of the requested accommodation." Id.

Plaintiff also argues that McKinney and Tyndall are distinguishable from this case because both involve "a history of excessive absenteeism at the time of the requested accommodation." (Document No. 36, pp. 14-15) (citing McKinney, 2022 WL 1697395; Tyndall, 31 F.3d 209 at 213).

Plaintiff then argues that "[b]ecause the Town had knowledge of Webber's disability and knowledge of a proposed reasonable accommodation **which was not disclosed to Webber**, her failure to request the accommodation cannot be a basis for dismissal of her ADA claim." (Document No. 36, p. 19) (emphasis added). Plaintiff contends:

> The Fourth Circuit has stated that "[a] leave request will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question."

(Document No. 36, p. 15) (quoting Wilson, 717 F.3d at 345).

Plaintiff asserts "[i]t is well settled that a request for leave may lead to a 'reasonable' accommodation." (Document No. 36, p. 12) (quoting Cisneros v. Wilson, 226 F.3d 1113, 1129 (10th Cir. 2000)). Plaintiff further asserts that "[m]ost courts have held that whether a limited extension of medical leave constitutes a reasonable accommodation under the ADA is a genuine issue of material fact." (Document No. 36, p. 16) (citing Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999); Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 155 F.3d 775

17

(6th Cir. 1998); Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647-48 (1st Cir. 2000); Powers v. Polygram Holding, 40 F. Supp. 2d 195 (S.D.N.Y. 1999); Herrmann v. Salt Lake City Corp., 21 F.4th 666 (10th Cir. 2021)).

Plaintiff contends that "the conditions of Webber's proposed leave were presented to the Town as follows: 'She may be expected to return to full fitness for her position following continued treatment of four-to-six weeks resulting in a stable mood, documentation from health care provider, and re-evaluation.'" (Document No. 36, p. 16) (quoting Document No. 1-2, p. 16). Plaintiff argues that "a period of four to six weeks of additional treatment and re-evaluation did not constitute an indefinite period of accommodation." (Document No. 36, pp. 17-18). Plaintiff also argues that "the Town attaches undue weight to the word 'may' in the statement that Webber 'may be expected to return to full fitness….'" (Document No. 36, p. 18) (quoting Document No. 33, p. 15). Plaintiff asserts that here, "the word 'may' signifies more than a mere possibility." (Document No. 36, p. 18).

Plaintiff further contends that the interactive process is not an end, but a "means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." (Document No. 36, p. 19) (quoting Wilson, 717 F.3d at 347). Plaintiff goes on to assert that "where the disability is known by the employer and the employer knows of the need for an accommodation, an employee need not request an accommodation." Id. (citing Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008)).

Plaintiff asserts that because the Town did not notify her of the "proposed accommodation" in the FMRT Group's report until terminating her employment, "it was impossible for [Plaintiff] to request this accommodation." (Document No. 36, p. 19). Plaintiff argues that "[u]nder the

Town's reasoning, it can evade the interactive process and ADA compliance by simply terminating an employee prior to disclosing the proposed accommodations from a healthcare provider it selects for the employee."  Id.

Defendant Town argues in its Reply that the reasoning in Myers prompts a conclusion that Plaintiff is not a "qualified individual with a disability" because she could not perform essential job functions at the time of her termination.  (Document No. 42, p. 4) (citing Myers v. Hose, 50 F.3d 278 (4th Cir. 1995)).

The Town also asserts that Plaintiff's reliance on Wilson is "misplaced."  Id. (citing Wilson v. Dollar General Corp., 717 F.3d 337 (4th Cir. 2013)).  The Town contends that Wilson "was limited to the circumstance of 'prospective leave to alleviate an intermittent disability.'"  Id.  The Town further contends that the plaintiff in Wilson requested a "finite" two days of leave, and because of this "short duration," "the Court noted that 'the inquiry is necessarily limited and retrospective,'" which "was not the case under the instant facts."  (Document No. 42, p. 4) (quoting Wilson, 717 F.3d at 345).  According to the Town, "Plaintiff cannot substitute an *ex post facto* assertion that leave for some period of additional weeks *would* have been successful, for the required showing at the time that leave would be successful."  (Document No. 42, p. 5) (emphasis in original).

The Town again argues that Plaintiff's failure to request additional leave "is fatal to her claim under the ADA."  (Document No. 42, p. 4) (citing Anderson, 117 F.4th at 165).  The Town asserts that Plaintiff "attempts to transform an assessment contained in a fitness-for-duty report – which indicated that the Plaintiff was unfit for duty, and 'may' return to full fitness for duty after continued treatment provided that the condition was corrected and contingencies were met – into

Case 5:24-cv-00123-KDB-DCK    Document 43    Filed 07/18/25    Page 19 of 24

a 'proposed accommodation,' which it was not." (Document No. 42, p. 5) (quoting Document No. 36, p. 19).

The undersigned finds Plaintiff's arguments most persuasive. The Town relies on <u>Myers</u> to argue that Plaintiff was not a "qualified individual" because she could not perform her job at the time she was terminated. (Document No. 32, p. 1). But the facts in <u>Myers</u> are distinguishable; in that case, the plaintiff was a bus driver with hypertension, heart failure, and "uncontrolled diabetes." <u>Myers</u>, 50 F.3d at 281. Not only was the plaintiff in <u>Myers</u> unable to perform his job when he requested leave, but he also offered no indication of when he might return to work. <u>See id.</u>

Here, Plaintiff had already begun receiving treatment and seeing positive results before her "Fitness for Duty Evaluation," and The FMRT Group psychologist indicated that Plaintiff "may be expected to return to full fitness for her position…" within four to six weeks, which is much less indefinite and uncertain than the plaintiff's requested leave in <u>Myers</u>. (Document No. 1-2, p. 16).

Accepting Plaintiff's allegations as true and construing them in the most favorable light, whether Plaintiff could have returned to work after four to six weeks presents a question of fact rather than a conclusory assertion that should be "disregarded in an <u>Iqbal</u> analysis." <u>See</u> <u>Wilmer & Assoc., PC v. Thiel (In re Thiel)</u>, 1:14-CV-168-MR, 2015 WL 773401, n.4 (Feb. 24, 2015).

The undersigned also does not find Plaintiff's failure to request an accommodation dispositive. Though the plaintiff's claim in <u>Anderson</u> failed because she never requested an accommodation, the timeline and situation are distinguishable here. <u>See</u> <u>Anderson v. Diamondback Inv. Grp., LLC</u>, 117 F.4th 165, 181 (4th Cir. 2024). Here, unlike the plaintiff in <u>Anderson</u>, Plaintiff Webber did not have clear opportunities to request an accommodation before

receiving notice of termination; she was allegedly awaiting results from her fitness for duty evaluation before determining next steps. (Document No. 36, p. 19).

The undersigned further observes that Plaintiff has plausibly alleged that the Town failed to engage in the interactive process. A recent Fourth Circuit Court of Appeals opinion sheds light on the interactive process and notes that the "four-part failure-to-accommodate test doesn't account for…nuances" tied to the interactive process. Tarquinio v. Johns Hopkins Univ. Applied Physics Lab, No. 24-1432, 2025 WL 1748716, at *11 (4th Cir. June 25, 2025). Writing for the Fourth Circuit, Chief Judge Diaz explains: "[t]he ADA's implementing regulations contemplate that an employer will often have to 'initiate an informal, interactive process' with an employee to identify a reasonable accommodation." Id. at p. 8 (citing 29 C.F.R. § 1630.2(o)(3)). The interactive process "give[s] employers and employees a chance to work together to figure out what accommodation, if any, would be reasonable and not unduly burdensome." Id. at p. 10. Chief Judge Diaz further opines that "an employer who doesn't engage in good faith with the interactive process violates the ADA so long as a reasonable accommodation was possible." Id. at p. 10. (citing Wilson, 717 F.3d at 347).

In this case, there is a factual dispute as to whether a reasonable accommodation was possible, but there is no indication that the Town attempted to engage in an interactive process to find out. "If an employee has a disability which causes limitations that interfere with work, and the employer knows it, then the employer must try to accommodate." Id. at p. 11.

Consistent with Plaintiff's contention based on Wilson, Chief Judge Diaz "repeat[s] that the interactive process is a means, not an end." Tarquinio, 2025 WL 1748716, at *12. As such,

> [n]either the employer nor the employee can rest on a breakdown in the interactive process without connecting that breakdown to an element of failure-to-accommodate liability. If the employer, for example, sabotages the interactive process to avoid discharging its

21

duty, then the employee can use that sabotage to show that the employer refused an accommodation.

Id.  Here, construing Plaintiff's allegations in the most favorable light, Plaintiff has sufficiently alleged that the Town has "sabotage[d] the interactive process to avoid discharging its duty" and stated a plausible ADA claim.  Id.

Based on the foregoing, the undersigned will respectfully recommend that Plaintiff's claim of discrimination based on disability be allowed to survive at this stage.

**B. Claims Against the Mooresville Police Department**

Defendant MPD moves to dismiss this action pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  (Document No. 34, p. 1).  Defendant MPD specifically argues that "the [MPD] is not a cognizable legal entity that is subject to being sued." Id.

Defendant MPD asserts that "other than corporations and certain individuals, an entity's capacity to sue or be sued is 'determined…by the law of the state where the court is located.'" (Document No. 35, p. 3) (quoting Fed.R.Civ.P. 17(b)).  MPD contends that North Carolina law "provides that 'in the absence of statute, the capacity to be sued exists only in persons in being,'" and "[i]n North Carolina there is no statute authorizing suit against a police department." (Document No. 35, p. 3) (first quoting McPherson v. First & Citizens Nat'l Bank, 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954);  then quoting Coleman v. Cooper, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (1988)).

MPD further asserts that this Court has previously held that MPD "'is not a cognizable legal entity capable of being sued,' and dismissed claims against it."  (Document No. 35, p. 3) (quoting Rose v. Mooresville Police Department, 5:24-CV-072-KDB-SCR, 2024 WL 2820117, at *1 (W.D.N.C. May 31, 2024)).  MPD goes on to cite other cases in the Western District of North

Carolina that "have previously reached similar conclusions with respect to analogous defendants." (Document No. 35, p. 3) (citing <u>Moore v. City of Asheville</u>, No. 1:03-CV-218-LHT, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003), <u>aff'd</u>, 396 F.3d 385; <u>Mayden v. McFadden</u>, No. 3:23-CV-568-MOC, 2024 WL 762358, at *6-7 (W.D.N.C. February 21, 2024); <u>Smith v. Munday</u>, 848 F.2d 248 (4th Cir. 2017)).

Plaintiff failed to file a response to Defendant MPD's motion to dismiss. (Document No. 34).

The undersigned finds MPD's argument persuasive and will recommend that all claims against Defendant MPD be dismissed.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant Town Of Mooresville's Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 32) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that "Defendant Town Of Mooresville Police Department's Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 34) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the

District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: July 17, 2025

s

David C. Keesler
United States Magistrate Judge